[No. 11077-2-I. Division One. August 23, 1982.]

*In the Matter of the Personal Restraint of*
AUDREY RUUD, *Petitioner.*

*Steven Scott* of *Evergreen Legal Services*, for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen D. Mix, Assistant,* for respondent.

CORBETT, J.—By personal restraint petition, Audrey Ruud seeks a redetermination of the date upon which she becomes eligible for parole, or, in the alternative, a hearing before the Board of Prison Terms and Paroles. We deny the petition.

Petitioner is serving a mandatory life sentence imposed after her conviction for first degree murder. In September 1972, while confined at Purdy, petitioner showed signs of psychotic behavior and was transferred to Western State Hospital for treatment. On October 10, 1972, she left the hospital without permission. She was arrested at the home of her parents in Crescent City, California and returned to Western State Hospital on October 15, 1972. Two days later she was transferred back to Purdy. She was not prosecuted for escape. Because of petitioner's absence for 5 days without permission, the prison superintendent certified the period of "continuous confinement" required by RCW 9.95.115[1] as beginning with her return in 1972, rather than her initial confinement, in jail, in 1969. As a result, the earliest possible date on which petitioner will be eligible for parole is February 14, 1986, rather than January 19, 1983. Her request for a hearing before the parole board on her new mandatory time start was denied.

Of the several issues raised by petitioner, only one has been presented to this panel for consideration. Does RCW 9.95.115 apply to prisoners who involuntarily leave continuous confinement? Petitioner contends that the break was

---

[1]RCW 9.95.115 provides in pertinent part:

"Parole of life term prisoners. The board of prison terms and paroles is hereby granted authority to parole any person sentenced to the penitentiary or the reformatory, under a mandatory life sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time: *Provided,* The superintendent of the penitentiary or the reformatory, as the case may be, certifies to the board of prison terms and paroles that such person's conduct and work have been meritorious, and based thereon, recommends parole for such person . . ."

involuntary because she was insane. She argues that to extend the length of her mandatory minimum term based upon an act for which she was not mentally responsible is fundamentally unfair and violates the due process clauses of the federal and state constitutions.

 The statute must be viewed in the perspective of its legislative history:

> It must be remembered that prior to this 1951 enactment, the board was given no discretion at all with respect to persons serving mandatory life sentences. No minimum sentence could be fixed by the board. Laws of 1947, ch. 92, § 2, p. 598. *Thorne v. Callahan,* 39 Wn.2d 43, 234 P.2d 517 (1951). The act is therefore alleviative; but the concern that the public be given all reasonable protection from persons disposed to commit crimes of such a grave nature undoubtedly persisted and motivated the legislature in requiring an extended minimum confinement to demonstrate the prisoner's reformation.

*In re George,* 90 Wn.2d 90, 93, 579 P.2d 354 (1978). The statute is clear and unambiguous. It dictates that the period of confinement shall not be broken by *any* period of absence from the control of the custodian. *George,* at 92. The statute does not distinguish between involuntary and voluntary absences. Nor does it refer to the mental state of the prisoner during any absence. We conclude that RCW 9.95.115 applies to prisoners who involuntarily leave continuous confinement. Any argument to the contrary is best addressed to the Legislature, not the judiciary.

Petitioner further argues that she has a constitutionally protected liberty interest in receiving credit on her mandatory minimum term for time served prior to her unauthorized absence. She claims a justifiable expectation rooted in constitutional and state law that she would be eligible for parole after 20 consecutive years of continuous confinement unless interrupted by an "actual escape." She requests this court to order the parole board to hold an administrative hearing and to credit her with all "pre–break" time if it is determined that she was mentally irresponsible at the time of her absence. She relies primarily upon *Morrissey v.*

*Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), which recognized a parolee's constitutionally protected "conditional liberty" interest in the revocation of his or her parole.

■ There is a crucial distinction between being deprived of a liberty one has, as in parole and probation, and being denied a conditional liberty that one desires, as in a discretionary parole–release determination. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 9, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979). Because the latter is not constitutionally protected, petitioner had no justifiable expectation rooted in constitutional law.

To support her contention that she had a justifiable expectation rooted in state law, the leading cases petitioner cites are *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975) and *In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979). *Monohan* involved the cancellation of a previously established, tentative parole release date. We are here concerned with a new mandatory time start. Although the parties are in agreement as to the earliest date on which petitioner would be eligible for parole, no tentative parole release date has been set. *Sinka* involved the setting of a discretionary minimum term. Although the procedures outlined in *Sinka* were later held to apply to the setting of a mandatory minimum term under RCW 9.95.040(2), *see In re Bush,* 26 Wn. App. 486, 495, 616 P.2d 666 (1980), *aff'd,* 95 Wn.2d 551, 627 P.2d 953 (1981), we are here concerned with a mandatory life sentence. RCW 9.95.115 gives the parole board authority to parole a life term prisoner only upon the satisfaction of certain stringent conditions: the prisoner's *continuous* confinement for a period of 20 *consecutive* years (less earned good time). Until these conditions are satisfied, petitioner can have no justifiable expectation rooted in state law, as she asserts.

In oral argument, counsel relied heavily upon *Reanier v. Smith,* 83 Wn.2d 342, 517 P.2d 949 (1974). That case does not affect our holding here as petitioner had been credited with all time served in detention prior to trial and sentence

before the break in her continuous confinement occurred.

We hold that RCW 9.95.115 does not require the parole board to consider the mental state of the petitioner during her unauthorized absence from custody, and that the starting date of petitioner's mandatory minimum sentence was properly redetermined without a hearing.

The personal restraint petition is denied.

ANDERSEN, C.J., and SWANSON, J., concur.