[No. 32940-5-I.    Division One.    May 16, 1994.]

*In the Matter of the Personal Restraint of* AARON
TURNER, *Petitioner.*

*Richard Fast* and *Smith, Fast & Leavitt; Janet H. Somers,*
for petitioner.

*Christine O. Gregoire, Attorney General,* and *Richard A.
McCartan, Assistant,* for respondent.

PER CURIAM. — Aaron Turner filed a personal restraint
petition seeking relief from a decision of the Department of
Corrections (DOC) and the Division of Juvenile Rehabilita-
tion (DJR) that restructured his confinement time and re-
sulted in his earned early release date being moved back ap-
proximately 18 months. The petition is denied.

## FACTS

In July 1989, Turner was convicted in juvenile court of
burglary and theft and sentenced to 84 to 112 weeks. Since
Turner was 17 at that time, the juvenile court extended ju-
risdiction past Turner's 18th birthday to allow completion of
the sentence.

After serving approximately 4 weeks of his sentence, Turner walked away from the juvenile facility where he was confined.

In 1990, Turner, who was then 18 and still on escape status from the juvenile sentence, was convicted as an adult of four counts of burglary and theft. He received a sentence of 12 months' confinement. That same month, Turner was convicted of additional adult offenses and sentenced to 14 months' confinement. The latter adult sentence was to run consecutive to the earlier adult sentence. Turner then began serving time on the adult sentences in a Department of Corrections facility. Turner alleges that the DOC and juvenile authorities had "no communication" at that time regarding his unserved juvenile sentence. The State concedes that there was "no formal communication" between them.

At some point, Turner escaped from his DOC facility. In March 1992, he was convicted for that escape and sentenced to 22 months' confinement. There was still no formal acknowledgment by the DOC of Turner's unfinished juvenile sentence.

At some point, the DOC informed Turner that his earned early release date would be in December 1992. That calculation was based solely on his adult sentences and time served on those sentences.

On July 10, 1992, Turner turned 21. By statute, the juvenile court lost jurisdiction over him on that date.

In December 1992, Turner received a memorandum from the DOC dated November 24, 1992. The memorandum stated:

> The provisions of RCW 13.40.285 require that your Division of Juvenile Rehabilitation sentence be served before your adult sentence commences. As a result, your time structure has been adjusted by the Division of Juvenile Rehabilitation and the Department of Corrections to meet the requirements of the statute. Your juvenile sentence is reflected on the attached record of official action from the Division of Juvenile Rehabilitation. Your adult sentence structure has been adjusted as a result of the DJR action required by RCW 13.40.285.
>
> Your juvenile time ends 7-10-92

Your consecutive adult sentence begins 7-10-92

Your DOC earned early release date is 7-27-94

If you have any questions, please discuss them with your counselor. You are also free to write to the Division of Juvenile Rehabilitation, if you wish. The institution from which you were sent to DOC has your records, as noted on their "Record of Official Action."

This restructuring of Turner's confinement time changed his release date from December 1992, to July 1994.

### DECISION

To establish entitlement to relief, Turner has the burden of showing "unlawful restraint" under RAP 16.4. *In re Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994). "Unlawful restraint" includes restraint accomplished in violation of state laws or administrative regulations. *Cashaw*, at 148-49.

Turner contends the decision restructuring his confinement time was accomplished in violation of RCW 13.40.285[1] — the statute cited by the DOC and the DJR as support for the restructure decision. Under that statute, a juvenile serving a term of confinement in a juvenile facility who is subsequently sentenced to the DOC for an adult offense "may, with the consent of the [DOC], be transferred by the secretary of social and health services to the [DOC] to serve the balance of the term of confinement ordered by the juvenile court." RCW 13.40.285. Turner contends there is no evidence that the statute's prerequisites for a transfer were satisfied prior to his 21st birthday, and any transfer accomplished after his 21st birthday was void because juvenile authorities lost jurisdiction to transfer him once he turned 21. The State concedes the record contains nothing showing a transfer before Turner turned 21, but argues that the statute does not require a formal transfer or express consent and that

---

[1]RCW 13.40.285 provides:

"A juvenile offender ordered to serve a term of confinement with the department of social and health services who is subsequently sentenced to the [DOC] may, with the consent of the [DOC], be transferred by the secretary of social and health services to the [DOC] to serve the balance of the term of confinement ordered by the juvenile court. The juvenile and adult sentences shall be served consecutively. In no case shall the secretary credit time served as a result of an adult conviction against the term of confinement ordered by the juvenile court."

consent can be implied from the DOC's acceptance of Turner.[2]

Under the circumstances presented, we need not decide whether a timely transfer in fact occurred. It is undisputed that but for Turner's escape, his juvenile sentence would not have been interrupted and the transfer issue would never have arisen. It also appears that Turner never informed DOC authorities of his unfinished juvenile sentence. When, as here, the record demonstrates that a belated transfer[3] pursuant to RCW 13.40.285 occurred and that a timely transfer was frustrated by the inmate's conduct, we will deem the transfer was timely done.

In so holding, we note that RCW 13.40.285 is a procedural statute, and, contrary to Turner's assertions, was not intended to embody or further any legislative intent to keep juveniles and adults in separate facilities. On the contrary, RCW 13.40.285 applies to situations where the juvenile offender/transferee has been subsequently convicted of an *adult* offense and thus belongs with, and need not be housed separately from, other adult offenders. Thus, any general policy against mixing juvenile and adult inmates is not implicated by the type of transfer at issue in this case.

The petition is denied.

---

[2]The State also argues that regardless of whether Turner was ever properly transferred to the DOC from the DJR, the restructuring of his confinement time was proper because RCW 13.40.285 requires that a juvenile sentence always be served before an adult sentence. This argument misconstrues RCW 13.40.285. Read in context, the statute's requirement that juvenile and adult sentences be served consecutively applies only to juveniles who have been officially transferred to a DOC facility to serve their juvenile and adult sentences.

[3]The memorandum restructuring Turner's confinement substantially complies with the prerequisites for a transfer under RCW 13.40.285. Although the memorandum does not expressly state that the Department of Social and Health Services and the DOC consented to the transfer, such consent is implied.