[No. 71387-1. En Banc.]
Argued March 12, 2002. Decided May 2, 2002.

*In the Matter of the Personal Restraint of* KENNETH MINES, *Petitioner.*

*Kenneth Mines*, pro se.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Christine O. Gregoire, Attorney General*, and *Donna H. Mullen* and *Diana M. Sheythe, Assistants*, for respondent.

Bridge, J. — After finding Kenneth Mines guilty of two parole violations, the Indeterminate Sentencing Review Board (Board) revoked his parole. In order to appeal his parole revocation, Mines' attorney sought a copy of the hearing tape. However, she was informed that the tape was blank. A request for a new hearing was denied and this personal restraint petition (PRP) followed. The Court of Appeals denied Mines' PRP, holding that though the Board violated RCW 9.95.124 and WAC 381-70-410 by not producing a record of the hearing, Mines had failed to show that he was prejudiced by the absence of a recording.

We hold that neither *In re Personal Restraint of Cashaw*, 123 Wn.2d 138, 150, 866 P.2d 8 (1994) nor *In re Personal Restraint of Shepard*, 127 Wn.2d 185, 898 P.2d 828 (1995) requires Mines to demonstrate prejudice from the Board's failure to record his parole revocation hearing in order to obtain a new hearing.

I

Mines was convicted of second degree murder and found to be a habitual criminal in 1981. He was sentenced to life in prison. The Board set his minimum sentence at 20 years. Mines was paroled in May 1998. The conditions of his parole required, in part, that Mines obey all laws and "[e]nter into and successfully complete any drug and alcohol program" deemed necessary by his community corrections officer (CCO).[1] Pursuant to these conditions, Mines' CCO, Suzann Braverman, required that he enroll in a 26-week drug and alcohol out-patient program at Lakeside Milam Recovery Center (Lakeside).

Approximately six months later, Mines was terminated

---

[1] Resp. of Board to Mot. for Discretionary Review at App. 3.

from the Lakeside program for allegedly making unwanted sexual advances toward several female patients. Mines' CCO moved to revoke his parole, specifying three violations: (1) failure to comply with the drug and alcohol treatment required by his CCO; (2) failure to obey the law by harassing Lucy Lotto in violation of former RCW 10.14.020 (1995);[2] and (3) failure to obey the law by harassing Denise Devine in violation of former RCW 10.14.020. Mines' parole was suspended pending a hearing by the Board.

A parole revocation hearing was held before Board member Kathryn Bail on November 23, 1998. Mines was present at the hearing and was represented by appointed counsel. The Board heard testimony from Preston Kayes of Lakeside, Lotto, Devine, Braverman, and Mines. Relying on the witnesses' testimony as well as the violation report, the Board found Mines guilty of counts one and two (failure to complete the drug and alcohol program and harassing Lotto), but not guilty of count three (harassing Devine). The Board revoked Mines' parole and fixed his new minimum sentence at 36 months.[3]

Intending to appeal the Board's decision, Mines retained counsel, Leta Schattauer. Schattauer requested a copy of Mines' hearing tape. The Board replied that it was unable to make a copy of the tape because the "hearing tape [was]

---

[2] Former RCW 10.14.020 states:

(1) "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct is contact by a person over age eighteen that would cause a reasonable parent to fear for the well-being of their child.

(2) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication.

[3] Although the Board's findings of fact and conclusions indicate that it relied on the witnesses' testimony and the violation report, it is clear from its "reasons for decision" that it also relied on Mines' criminal and institutional records.

blank."[4] Pursuant to WAC 381-70-410, which requires the Board to tape-record all parole revocation hearings, and *Cashaw*, Mines requested a new hearing. The Board denied this request, stating that WAC 381-70-410 was only a procedural guideline and created no procedural or substantive right.

Mines, acting pro se, then filed this PRP with the Court of Appeals.[5] The Court of Appeals subsequently appointed counsel to represent him. Relying on *Cashaw* and *Shepard*, Mines argued that because the Board had not complied with RCW 9.95.124 and WAC 381-70-410 by failing to record his parole revocation hearing, he was entitled to a new hearing.

The Court of Appeals agreed that the Board had violated WAC 381-70-410 and RCW 9.95.124 by failing to record Mines' hearing, but denied Mines' petition because he had not shown that he was prejudiced by the violation. Although acknowledging that the "court in *Cashaw* and *Shepard* did not expressly discuss a prejudice requirement, and evaluated those petitions by examining only the requirements of RAP 16.4," the court nonetheless held that both cases had implicitly required the petitioners to demonstrate prejudice in order to prevail.[6] Concluding that Mines had failed to demonstrate any prejudice, the Court of Appeals denied his PRP. This court granted Mines' motion for discretionary review.[7] Prior to oral argument, the State moved to dismiss the case as moot because Mines had been paroled.

II

■ The Board first argues that this case should be dismissed as moot. "A case is moot if a court can no longer provide effective relief." *In re Cross*, 99 Wn.2d 373, 376-77,

---

[4] PRP at Ex. I.

[5] *In re Pers. Restraint of Mines*, 107 Wn. App. 630, 27 P.3d 691 (2001), *review granted*, 145 Wn.2d 1020 (2002).

[6] *Id.* at 636.

[7] *In re Pers. Restraint of Mines*, 145 Wn.2d 1020, 51 P.3d 88 (2002).

662 P.2d 828 (1983). The Board asserts that because Mines has been paroled, there is no need to grant him a new parole revocation hearing. Thus, this court cannot provide him with effective relief. Mines responds that the case is not moot because collateral consequences still exist. Alternatively, Mines asserts that even if the case is moot, this court may still reach the merits of his claim because it presents matters of continuing and substantial public interest.

In *Monohan v. Burdman*, 84 Wn.2d 922, 925, 530 P.2d 334 (1975), we noted that "the restrictions, limitations, and conditions attached to the usual parole status constitute a form of 'custody' falling within the reach of habeas corpus relief." More importantly for Mines' case, this court stated that the potential adverse effects of a parole date cancellation, including the use of that violation when considering continued parole or possible probation, may be sufficient to "retrieve [the] petition from the 'limbo of mootness.'" *Id.* (quoting *Parker v. Ellis*, 362 U.S. 574, 577, 80 S. Ct. 909, 4 L. Ed. 2d 963 (1960) (Warren, C.J., dissenting)). Because of these considerations, the court in *Monohan* held that the petition was not rendered moot by the petitioner's parole. *Id.*

Mines asserts that his parole revocation has collateral consequences similar to those discussed in *Monohan*. He contends that because WAC 381-70-030(4) requires the Board to consider its previous actions during the period of parole when making decisions regarding parole revocation or reinstatement, his prior parole revocation may affect his position should his parole be revoked in the future.

Although Mines' case is arguably distinguishable from *Monohan* in that Mines' basis for relief is not habeas corpus, but a PRP pursuant to RAP 16.4, the collateral consequences that he may suffer as a result of his prior parole revocation are similar to those mentioned in *Monohan*. However, we need not decide this question because we conclude that matters of substantial and continuing public interest are presented, which require us to decide the merits of the petition.

■ A court may decide a technically moot case if it involves " 'matters of continuing and substantial public interest.' " *Cross*, 99 Wn.2d at 377 (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). When determining the " 'requisite degree of public interest,' " courts should consider (1) " 'the public or private nature of the question presented,' " (2) " 'the desirability of an authoritative determination for the future guidance of public officers, and' " (3) " 'the likelihood of future recurrence of the question.' " *Sorenson*, 80 Wn.2d at 558 (quoting *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769 (1952)).

In *Hart v. Department of Social & Health Services*, 111 Wn.2d 445, 449, 759 P.2d 1206 (1988), this court observed that most cases in which appellate courts utilized the exception to the mootness doctrine involved issues of constitutional or statutory interpretation. These types of issues, the court stated, tended to be more public in nature, more likely to arise again, and the decisions helped to guide public officials. *Id.* It further noted that the exception had not been used in cases involving statutory or regulatory interpretation limited to their facts. *Id.*

██ Considering the three requirements, we conclude that Mines' case involves matters of continuing and substantial public interest. The Court of Appeals opinion was not limited to the specific facts presented in this case, but included an interpretation of this court's holdings in *Cashaw* and *Shepard*. Although the rule enunciated by the Court of Appeals does not address statutory interpretation, it does involve an interpretation of case law. Whether case law has been properly interpreted is analogous to questions of statutory interpretation, which, as we noted in *Hart*, generally involve issues that are public in nature. Moreover, because the Court of Appeals opinion arguably conflicts with the decisions in *Cashaw* and *Shepard*, it is necessary to provide an authoritative determination on the issue to guide both the appellate courts and the Board. Finally, despite the Board's assertion that the specific

violation in this case is unlikely to reoccur, it is likely that other violations of state law or regulation addressing parolability issues may occur in the future. Thus, the need to clarify the standard of review in this area remains.

## III

Mines asserts that the Court of Appeals decision conflicts with our holdings in *Cashaw* and *Shepard*. He argues that neither *Cashaw* nor *Shepard* require a showing of prejudice once a petitioner proves that the Board violated the laws of Washington. We agree.

In *Cashaw*, this court examined whether a petitioner was entitled to relief where the Board set his minimum term for incarceration so as to coincide with the remainder of the petitioner's maximum sentence without providing the petitioner with notice or an in-person hearing, which violated the Board's own procedural rules. *Cashaw*, 123 Wn.2d at 140-41. Although the court held that there was no due process liberty interest created by the Board's regulations, *id.* at 147, it nonetheless concluded that "an inmate filing a PRP may be entitled to relief merely by showing that the Board failed to follow its own procedural regulations in setting a minimum term." *Id.* at 147-48.

The court further stated that the threshold requirements that generally apply to PRPs—that a petitioner show either an " 'actual and substantial prejudice' " from a constitutional error or " 'a fundamental defect which inherently results in a complete miscarriage of justice' "—did not apply to petitions "challenging the Board's failure to follow its own procedures." *Id.* at 148 (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990)). It reasoned that the rationale for the threshold requirements was not applicable in this situation because a petitioner challenging a Board decision "generally has had no previous or alternative avenue for obtaining state judicial review." *Id.* at 149. The court, therefore, held that it would evaluate Cashaw's petition "by examining only the require-

ments of RAP 16.4." *Id.* It concluded that Cashaw was entitled to relief because he was restrained pursuant to RAP 16.4(b) and his restraint was unlawful under RAP 16.4(c)(2), (6) because "it was accomplished in violation of the Board's regulations." *Id.*

In *Shepard*, we reaffirmed the holding of *Cashaw*. We stated that "[t]his court evaluates petitions that challenge parole decisions 'by examining *only* the requirements of RAP 16.4.'" *Shepard*, 127 Wn.2d at 191 (quoting *Cashaw*, 123 Wn.2d at 149). In doing so, the court rejected the Board's contention that a petitioner must also show that the Board abused its discretion once he or she has shown a procedural violation. *Id.* at 191-92. It stated that the abuse of discretion requirement applied only to challenges to the substance of the Board's decision and not to assertions that the Board failed to adhere to its own procedures. *Id.* The court concluded that because the facts in that case where identical to those in *Cashaw*, the petitioner was entitled to a new hearing. *Id.*

 Even though *Cashaw* and *Shepard* addressed procedural violations in setting a new minimum sentence and this case involves a procedural violation in a parole revocation hearing, the same considerations apply to both situations. Parole revocation hearings, like parolability decisions, are reviewable only by PRPs. Furthermore, in Mines' case the Board's decision to revoke his parole was coupled with a decision to impose a new minimum sentence. Thus, *Cashaw* and *Shepard* govern our analysis.

The Court of Appeals held that the Board had violated both RCW 9.95.124[8] and WAC 381-70-410[9] when it failed to record the parole revocation hearing. *In re Pers. Restraint of Mines*, 107 Wn. App. 630, 635, 27 P.3d 691 (2001). It

---

[8] RCW 9.95.124 states in part that parole revocation "hearings shall be recorded either manually or by a mechanical recording device."

[9] WAC 381-70-410 states in part, "[t]here will be a recording made of all hearings conducted under the provisions of this chapter. Such recordings shall be preserved for not less than six months subsequent to the hearing at the offices of the board in Olympia."

rejected the Board's argument that there could be no violation because the Board had acted in good faith in attempting to record the proceedings. *Id.* The Board does not challenge this conclusion.

Although the Court of Appeals acknowledged that the court in *Cashaw* and *Shepard* "did not expressly discuss a prejudice requirement, and evaluated those petitions by examining only the requirements of RAP 16.4," it nevertheless concluded that Mines must show that he was prejudiced by the procedural violation in order to obtain a new hearing. *Id.* at 636.

We reject the Court of Appeals interpretation of *Cashaw* and *Shepard*. Neither the Board nor the Court of Appeals cites to any language in *Cashaw* or *Shepard* which supports this implied requirement. The plain language of both cases clearly states that in reviewing a petition challenging a parole decision, the court examines " '*only* the requirements of RAP 16.4.' " *Shepard*, 127 Wn.2d at 191 (quoting *Cashaw*, 123 Wn.2d at 149). Furthermore, the court in *Cashaw* expressly rejected requiring petitioners challenging parolability decisions to satisfy the threshold showing required of most PRPs. *Cashaw*, 123 Wn.2d at 149. It would be inconsistent to eliminate the threshold prejudice requirement ("actual and substantial prejudice" or "a fundamental defect"), but impose a subsequent prejudice requirement before relief can be granted to a petitioner.

The only reference to *Cashaw* and *Shepard* made by the Court of Appeals was its statement that "it is clear that the petitioners in those cases were seriously prejudiced by the Board's failure to provide notice and an in-person hearing before setting the minimum term to equal the maximum sentence." *Mines*, 107 Wn. App. at 636. However, no showing was made in either *Cashaw* or *Shepard* that the petitioners were prejudiced by the violation—that the outcome would have been different had the petitioners attended the hearings. Thus, the facts of *Cashaw* and *Shepard* do not provide any support for the argument that prejudice was implicitly required.

The Board asserts that the United States Supreme Court's holding in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) "undermines the principle that simply because a procedural violation occurs, a petition should be granted." Resp. of Board to Mot. for Discretionary Review at 11. However, the Board's reliance on *Sandin* is misplaced. First *Sandin* addressed the issue of whether a prisoner had a liberty interest that could give rise to due process protections in remaining free from segregated confinement. *Sandin*, 515 U.S. at 476. It held that neither the state's prison regulation nor the Due Process Clause afforded the prisoner "a protected liberty interest that would entitle him to the procedural protections." *Id.* at 487. In so holding, the Court recognized that states "may under certain circumstances create liberty interests which are protected by the Due Process Clause," but stated that these interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In the parolability context, we have already answered the question of whether parole regulations create procedural due process rights in the negative. *See Cashaw*, 123 Wn.2d at 144-47. In *Cashaw*, the court held that the Board's regulations as to parolability did not create a liberty interest under the Due Process Clause. *Id.* at 147. Instead, its decision that a petitioner may be entitled to relief by showing that the Board failed to follow its own regulations was based on state law. *Id.* at 147-48.

Second, *Sandin* addressed the rights of prison inmates in disciplinary matters. *Sandin*, 515 U.S. at 476. The Court of Appeals has already rejected the application of *Cashaw* to prison disciplinary issues. *See In re Pers. Restraint of Burton*, 80 Wn. App. 573, 585, 910 P.2d 1295 (1996) (concluding that "*Cashaw* did not eliminate the requirement that a petitioner show actual and substantial prejudice in order to maintain a PRP challenging a prison disciplinary action"). Thus, *Sandin* simply does not affect the holding in *Cashaw*.

The Board makes several policy arguments to support its position that a petitioner should be required to show prejudice resulting from the violation. We find these arguments unpersuasive. First, the Board contends that to presume prejudice from a procedural violation would be contrary to the "fundamental principle of appellate procedure that requires a showing of prejudice as a predicate to relief on appeal." Suppl. Br. of Board at 7.[10] Contrary to the Board's position, whether a showing of prejudice is required generally depends on applicable law. In this case, the controlling law is *Cashaw*, *Shepard*, and RAP 16.4, none of which requires a showing of prejudice in order to obtain a new hearing.

Second, the Board asserts that the Court of Appeals correctly concluded that a contrary holding would result in encouraging inmates " 'to comb through regulations in search of minor procedural flaws in hopes of obtaining new hearings on the basis of harmless technical errors.' " Resp. of Board to Mot. for Discretionary Review at 13 (quoting *Mines*, 107 Wn. App. at 636).

It is arguable that the Board's failure to record the hearing was in fact a minor procedural violation. In any event, the Board's concerns seem to be unjustified. Although *Cashaw* was decided in 1994, only a handful of cases have relied on it for the proposition that a personal restraint petitioner need only meet the requirements of RAP 16.4 when he or she brings a petition alleging error in a parolability decision. *See In re Pers. Restraint of Peterson*, 99 Wn. App. 673, 677, 995 P.2d 83 (2000); *In re Pers. Restraint of Webster*, 74 Wn. App. 832, 833, 875 P.2d 1244 (1994); *In re Pers. Restraint of Turner*, 74 Wn. App. 596, 598, 875 P.2d 1219 (1994); *In re Pers. Restraint of Nelson*, No. 45129-4-I, 2000 Wash. App. LEXIS 544, at *2, 2000 WL 350580, at *1 (Wash. Ct. App. Mar. 1, 2000); *In re Pers.*

[10] The Board seems to misunderstand the question posed in this case. It is not whether prejudice will be presumed, but whether it is required at all. Thus, the Board's discussion in its supplemental brief focusing on the definition of prejudice and harmless error has no bearing on this case.

*Restraint of Compton*, No. 39942-0-I, 1998 Wash. App. LEXIS 468, 1998 WL 141934 (Wash. Ct. App. Mar. 30, 1998). With the exception of Mines, none of the cases applying the *Cashaw* rule raises the type of procedural violation that was at issue in *Cashaw* and *Shepard*.

## IV

We, therefore, hold that neither *Cashaw* nor *Shepard* requires a personal restraint petitioner to show that he or she was prejudiced by a procedural violation in a parole revocation hearing in order to obtain a new hearing if the petitioner otherwise meets the requirements of RAP 16.4. Because the revocation of Mines' parole placed him under restraint and because the Board violated RCW 9.95.124 and WAC 381-70-410 when it failed to record Mines' parole revocation hearing, Mines has satisfied the requirements of RAP 16.4. The Court of Appeals decision denying Mines' PRP is reversed.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.