[No. 42992.    En Banc.    January 7, 1975.]

In the Matter of the Application for a Writ of Habeas
Corpus of PHILIP MONOHAN, Petitioner, v. MILTON
BURDMAN, as Secretary of the Department of
Social and Health Services,
Respondent.

Richard Emery, Director, and Allen M. Ressler of Legal
Services Center (Seattle), for petitioner.

Slade Gorton, Attorney General, and Thomas A. Predi-
letto, Assistant, for respondent.

HAMILTON, J.—Petitioner, Philip Monohan, seeks a writ of habeas corpus. The essence of his petition rests upon his contention that a tentative parole release date, accorded him while an inmate of the Washington State Corrections Center, was cancelled without appropriate notice and an adjudicatory hearing. Under the circumstances of this case, we hold that he was entitled to minimal due process requirements of a notice and hearing. Accordingly, we refer the matter to respondent for appropriate proceedings.

The operative circumstances are these. In 1968, petitioner was convicted of two separate felonies. He was sentenced on each to be confined in a correctional facility. In due course the minimum term for each offense was set, the respective terms to run consecutively.

On May 25, 1973, the petitioner met with a panel of the Board of Prison Terms and Paroles for his annual progress conference. At this time, it was determined that he had performed so well that the panel ordered a parole on his first offense and reduced his minimum sentence on the second offense to the end that a tentative parole release date was established as of August 30, 1973. Actual release on the specified date was conditioned upon development of an acceptable parole rehabilitation plan.

Initially, an interstate parole plan was considered. However, it appeared that certain difficulties arose with respect to the interstate plan, as a result of which petitioner was granted a furlough, pursuant to RCW 72.66, to undertake development of a parole plan in his home community of Vancouver, Washington. Petitioner arrived at his home in Vancouver on August 1, 1973.

On August 2, 1973, petitioner was arrested by the Clark County Sheriff and charged with disorderly conduct. The charge arose out of his alleged participation in a drug-oriented party. After notification to petitioner's supervising parole officer, he was returned on August 3, 1973, to the corrections center by Clark County authorities. On the same day, the Clark County Prosecuting Attorney's office

advised the corrections center authorities that all charges against petitioner had been dismissed.

Upon arrival at the corrections facility, petitioner was placed in segregation for a period of time following which he appeared for interview before the institution's classification committee. He was not given any written notice as to what allegations of misconduct the committee would be considering. As a result of the interview, the committee concluded from written reports of the arrest incident that petitioner had violated his furlough conditions and that he was then unsuitable for parole. The committee recommended that the parole board reconsider the matter of his pending parole. During the interview, petitioner denied any misconduct during his furlough and asserted his innocence of the disorderly conduct charge.

Pursuant to the recommendation of the classification committee, a panel of the parole board conducted a hearing on August 30, 1973. Although orally advised of the reasons for the hearing, petitioner was not given written notification of the issues to be considered, nor was he accorded the opportunity to confront his accusers, cross-examine them, or call witnesses on his own behalf. Following the hearing and despite petitioner's protestations of innocence, the panel accepted the conclusions and recommendation of the classification committee, cancelled petitioner's tentative release date, and extended his minimum term for 9 months.

Petitioner again met with a panel of the parole board in December 1973. It was then determined that he had again performed well at the institution, good time was granted, and a tentative parole release date of March 29, 1974, was established. His release date was reached after filing of his petition, but prior to oral argument before this court on the petition.

Although not briefed by either party, a threshold question raised during oral argument concerns the propriety of our considering the issues raised by petitioner in view of his intervening release on parole. In short, has his release

rendered moot the issues he propounds regarding the summary cancellation of his August 30; 1973, tentative parole release date? We think not.

■ In the first place, the restrictions, limitations, and conditions attached to the usual parole status constitute a form of "custody" falling within the reach of habeas corpus relief. *Jones v. Cunningham*, 371 U.S. 236, 9 L. Ed. 2d 285, 83 S. Ct. 373, 92 A.L.R.2d 675 (1963). This is so because a parolee, unlike the ordinary citizen, is subject to supervision by his parole officer, limited in his mode, manner, and place of living and travel, restricted as to his associates and type of employment, and subject to reincarceration in the event of a breach of any condition of his parole. Thus, he is not a free man in the commonly accepted sense.

In the second place, the potentially adverse effects of petitioner's tentative parole release date cancellation are sufficiently significant "collateral consequences" to retrieve his petition from the "limbo of mootness,"[1] although he is no longer physically incarcerated by virtue of that release date revocation. *Scarpelli v. Gagnon*, 317 F. Supp. 72 (E.D. Wis. 1970, *aff'd sub nom. Gunsolus v. Gagnon*, 454 F.2d 416 (7th Cir. 1971), *aff'd in part, rev'd in part on other grounds sub nom. Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973); *see also Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 20 L.Ed. 2d 554, 88 S. Ct. 1556 (1968); *Hahn v. Burke*, 430 F.2d 100 (7th Cir. 1970); *Hewett v. North Carolina*, 415 F.2d 1316 (4th Cir. 1969). It is not unlikely that his supervising parole officer or a future sentencing judge, in the event of an infraction of the rules of parole or law, might well consider the rescission of his initial parole release date as a factor mitigating against continued parole or possible probation.

We conclude that, for purposes of our consideration on the merits, petitioner's application for a writ of habeas corpus is not moot.

---

[1] *Parker v. Ellis*, 362 U.S. 574, 577, 4 L. Ed. 2d 963, 80 S. Ct. 909 (1960) (dissenting opinion).

██ The precise question posed here is whether the right of minimal due process hearings, as guarantied to probationers and parolees under *Gagnon v. Scarpelli, supra*, and *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), should be accorded to proceedings leading up to the cancellation of a previously established, tentative parole release date for reasons other than inability to develop an acceptable parole rehabilitation plan. As we have indicated, we believe it should.

Initially, we note that in this state minimal due process hearings are provided for under RCW 9.95.080[2] in situations where a prison inmate is accused of violating disciplinary rules within the prison facility. The extension of a prisoner's minimum term may result from a hearing under this statute. Furlough as a prelude to and contrasted with parole would appear on the surface to be more restrictive than outright parole, and more nearly representative of an extension or continuation, beyond the walls, of "institutional custody." Thus, it would appear reasonable to conclude that furlough infractions, leading to cancellation of a parole release date, more closely approximate violations of institutional rules than otherwise and thereby properly fall within the contemplation of RCW 9.95.080.

The respondent, however, points to RCW 9.95.052[3] and

[2]"In case any convicted person undergoing sentence in the penitentiary, reformatory, or other state correctional institution, commits any infractions of the rules and regulations of the institution, the board of prison terms and paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, including the forfeiture of all or a portion of credits earned or to be earned, pursuant to the provisions of RCW 9.95.110, and make a new order determining the length of time he shall serve, not exceeding the maximum penalty provided by law for the crime for which he was convicted, or the maximum fixed by the court. Such revocation and redetermination shall not be had except upon a hearing before the board of prison terms and paroles. At such hearing the convicted person shall be present and entitled to be heard and may present evidence and witnesses in his behalf." RCW 9.95.080.

[3]"At any time after the board of prison terms and paroles has determined the minimum term of confinement of any person subject to confinement in a state correctional institution, the board may request

asserts that the procedure there outlined was the procedure followed in the instant case and that no minimal due process safeguards are therein provided. Furthermore, respondent asserts that, in any event, petitioner was notified of and allowed to explain or deny his actions on furlough both before the classification committee and the panel of the parole board which ultimately cancelled his tentative parole release date. We cannot agree with respondent, not only because we believe RCW 9.95.080 more appropriately governs here, but also because we are satisfied such a result flows from the United State Supreme Court's decisions in *Morrissey* and *Gagnon. Cf. Means v. Wainwright*, 299 So. 2d 577 (Fla. 1974).

The problem, if one arises from a statutory hiatus, may best be resolved by looking to the analogous situation of a parole revocation proceeding. We have, under the United States Supreme Court rulings in *Morrissey* and *Gagnon*, inferentially, if not directly recognized that a parolee is entitled to a preliminary and final revocation hearing. *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974); *State v. Simms*, 10 Wn. App. 75, 516 P.2d 1088 (1973), *petition for review denied*, 83 Wn.2d 1007 (1974); *State v. Johnson*, 9 Wn. App. 766, 514 P.2d 1073 (1973), *petition for review denied*, 83 Wn.2d 1006 (1974). The underlying reasoning is that even though parole revocation is not a stage of criminal prosecution, revocation does result in a loss of conditional liberty, and minimum due process standards must be met.

The critical inquiry here, then, would appear to be whether the "potential conditional liberty" established by the fixing of a tentative parole release date has created such a right or anticipation of impending liberty, that

the superintendent of such correctional institution to conduct a full review of such person's prospects for rehabilitation and report to the board the facts of such review and the resulting findings. Upon the basis of such report and such other information and investigation that the board deems appropriate the board may redetermine and refix such convicted person's minimum term of confinement." RCW 9.95.052.

denial of it or continued incarceration beyond the tentative date, for causes other than failure to provide an adequate rehabilitation plan, would warrant a due process determination of the reasons for cancellation of the tentatively fixed release date. Although the United States Supreme Court has recognized that an individual's mere anticipation or hope of freedom may not be of as great an import as a. person's justifiable reliance in maintaining his conditional freedom on parole as long as he abides by the conditions of his release,[4] it should be recognized that the same evaluation process that occurs in a parole revocation occurred in the instant situation.

The system of establishing in advance a tentative parole release date would appear to assume that, given a satisfactory parole rehabilitation plan, the prisoner may justifiably rely upon the prefixed release date, so long as he otherwise abides by the conditions of his incarceration. By analogy to the parole revocation process, it would appear that the first step in the cancellation for cause of a tentative parole release date involves a retrospective factual determination, i.e., whether there has in fact been a violation of one or more applicable institutional rules or restrictions. Only if it is determined that a violation of conditions has occurred does the second question arise; that is, should the tentative parole release date be cancelled and the minimum term extended for the protection of society and the improvement of the prisoner's chances for rehabilitation? Cf. *Morrissey* and *Gagnon*.

We do not feel that the application of minimum due process procedural safeguards will unduly affect the resolution of either question in tentative parole release date cancellations for cause. The respondent, however, asserts that the application of due process requirements in such proceedings will be burdensome upon the State from the standpoint of procuring witnesses and presenting evidence.

[4]*Morrissey v. Brewer,* 408 U.S. 471, 482 n.8, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

Respondent's concern was fully comprehended and answered in *Gagnon*:

> While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the *Morrissey* requirements.

*Gagnon v. Scarpelli, supra* at 783 n.5.

We pause to observe, as have several other courts, that the initial fixing of a tentative parole release date is of a discretionary nature and does not involve a due process hearing. *Bradford v. Weinstein,* 357 F. Supp. 1127 (E.D.N.C. 1973); *Menechino v. Oswald,* 430 F.2d 403 (2d Cir. 1970), *cert. denied,* 400 U.S. 1023, 27 L. Ed. 2d 635, 91 S. Ct. 588 (1971); *Lewis v. Rockefeller,* 305 F. Supp. 258 (S.D.N.Y. 1969), *aff'd,* 431 F.2d 368 (2d Cir. 1970). Indeed, petitioner in this case does not claim that due process procedural safeguards surround establishment of parole release dates as such. However, as we have noted, once parole or a promise of parole has been granted in the form of a tentative release date, we are satisfied that the prospective parolee enjoys a unique status and is deserving of minimal due process safeguards before cancellation of that date for reasons other than failure to develop an adequate rehabilitation plan. *Accord, Anderson v. Nelson,* 352 F. Supp. 1124 (N.D. Cal. 1972); *Colligan v. United State,* 349 F. Supp. 1233 (E. D. Mich. 1972); *In re Prewitt,* 8 Cal. 3d 470, 503 P.2d 1326, 105 Cal. Rptr. 318 (1972); *Means v. Wainwright, supra.*

■ At a preliminary hearing, either on site or otherwise, a prospective parolee is entitled to notice of alleged violations of furlough or internal disciplinary rules, an opportunity to appear and present evidence in his own behalf, a conditional right to confront adverse witnesses, a neutral

decisionmaker, and a written report of the hearing. *Morrissey v. Brewer, supra* at 486-87. This initial hearing is, of course, in the nature of a probable cause hearing to determine if grounds exist for reconsideration of the established tentative parole release date by the parole board.

The final hearing on a tentative parole date cancellation decision is a less summary one because the action under consideration is the ultimate decision as to rescission of the parole date rather than the mere determination of probable cause. Nevertheless, the "minimum requirements of due process" include very similar elements:

> (a) written notice of the claimed violations of parole [furlough, or internal disciplinary rules]; (b) disclosure to the [prospective] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [or rescinding] parole.

*Morrissey v. Brewer, supra* at 489.

As we have heretofore observed, the collateral consequences of the cancellation of petitioner's tentative parole release date of August 30, 1973, could adversely affect him in the event of future difficulty with the parole board or with a sentencing court. Thus, a redetermination in this case would not be inappropriate, limited, however, to the final hearing stage before the parole board or a panel thereof. While we do not deem it appropriate or necessary to take additional remedial action upon petitioner's application for a writ of habeas corpus at this time, we recognize that should petitioner be successful in persuading the parole board of his innocence of the alleged charges at the new hearing, he might apply for such relief as his counsel should deem appropriate, such as a reduction of his term of

parole to take into account the increase in his minimum sentence and/or expunction of the prison records relating to the furlough violation and cancellation of his tentative parole release date.

Accordingly, we refer this matter to respondent for further proceedings in keeping with this opinion.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied March 13, 1975.