# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Welfare of:<br><br>K.M.<br><br>Minor Child. | No. 53328-6-II<br><br>UNPUBLISHED OPINION |

LEE, C.J. — K.M. appeals the dismissal of her petition for writ of habeas corpus. She argues that (1) the Pierce County (PC) juvenile court erred by dismissing her petition as moot; (2) even if the petition is moot, it presents an issue of continuing and substantial public interest; (3) the King County (KC) juvenile court erred by finding her in contempt of the dependency order under RCW 13.34.165 when she is not a party to the dependency proceeding; (4) the KC juvenile court erred by finding her in contempt of the dependency order because she did not violate the conditions of the order; and (5) the contempt orders deprived her of due process.

We conclude that K.M.'s petition for habeas corpus is moot and does not present an issue of continuing and substantial public interest. Therefore, we affirm the PC juvenile court's dismissal of the petition as moot.

## FACTS

### A.    BACKGROUND

K.M. was born in September 2004. Her brother died in a car accident in 2012, her mother died of cancer in 2016, and her father committed suicide in 2017. K.M.'s other brother allegedly

sexually abused K.M., and his whereabouts are unknown. After the death of her parents, K.M.'s aunt and uncle, the Delgados, obtained legal guardianship, and K.M. resided with them beginning in September 2017.

The Delgados suspected that K.M.'s other uncle had sexually abused K.M. and they twice reported suspected abuse. The Delgados also expressed concern about K.M.'s "hyper activity, mental health, and . . . sexualized behavior" and informed the Department of Children, Youth, and Families (the Department)[1] that they did not feel capable of taking care of K.M. Clerk's Papers (CP) at 144.

On January 23, 2018, the Department filed a dependency petition. At the Shelter Care hearing on January 24, the KC juvenile court found that "[r]eturning the child to the home would seriously endanger the child's health, safety, and welfare." CP at 203. K.M. was placed in temporary custody and under the supervision of the Department.

On March 23, the KC juvenile court found K.M. dependent under RCW 13.34.030(6)(c) and entered an order of dependency. The order stated, in relevant part,

> The child is placed in the custody, control and care of [the Department], which shall have the authority to place and maintain the child in:
>
> Licensed care:
>
>> because there is no relative or other suitable person with whom the child has a relationship and who is willing, appropriate and available to care for the child.

---

[1] In July 2017, the Washington State Governor signed H.B. 1661, which moved many of the Department's child-related services from the Department of Social and Health Services to the Department of Children, Youth, and Families. Starting July 1, 2018, the Department of Social and Health Services Children's Administration and the Department of Early Learning ceased to exist and the Department of Children, Youth, and Families took over all functions of both agencies.

CP at 147. On March 30, the KC juvenile court entered an Order of Disposition on Dependency confirming K.M.'s placement with the Department as of March 23.

B.    CONTEMPT ORDERS

On May 16, the KC juvenile court issued an arrest warrant for K.M. after the Department moved for an order to show cause based on K.M.'s violation of the March 23 placement order. The KC juvenile court found probable cause that K.M. had violated her placement order because she had left her placement on May 13 and had not returned.

K.M. was arrested on May 29. At a detention review hearing on May 30, K.M. admitted to being in violation of her placement order. The KC juvenile court found K.M. in contempt and gave K.M. credit for 1 day time served. The contempt order stated that K.M. could purge the contempt by reading a book on human trafficking. K.M. was released to the Department. This contempt order was not purged.

On June 27, the KC juvenile court issued another arrest warrant for K.M. after the Department moved for an order to show cause regarding K.M.'s contempt for again violating the March 23 placement order. The KC juvenile court found probable cause that K.M. had again violated the placement order because she had run away from her placement and refused to return.

K.M. was arrested on July 31[2]. During a detention review hearing on August 1, K.M. admitted to being in violation of the March 23 placement order. The KC juvenile court held K.M. in contempt and released her after 1 day in detention. The juvenile court did not impose any purge requirements, and K.M. was ordered to return to court-ordered placement.

---

[2] We note that the arrest warrant service date reads "July 32, 2018"; however, based on the record on appeal, we treat this date as July 31, 2018. CR at 78.

On September 6, the KC juvenile court again issued an arrest warrant for K.M. after the Department moved for an order to show cause regarding contempt after K.M. again violated the March 23 placement order. The KC juvenile court found probable cause that K.M. had violated the placement order because she had left her placement on August 2.

K.M. was arrested on November 9. On November 13, the parties agreed to a finding of contempt. During the detention review hearing, K.M. admitted "that [she] was in violation of [the] placement order." CP at 66. The KC juvenile court entered a contempt order, requiring that K.M. be held in detention for 6 days with a purge condition to write a one-page paper about where she sees herself in one year. On November 14, the KC juvenile court entered a release order for K.M., stating, "The youth has purged her contempt by complying with the conditions set forth in this court's orders and completing her purge paper." CP at 63. The KC juvenile court released K.M. to the Department for placement in accordance with prior court orders.

On December 20, the KC juvenile court issued an arrest warrant for K.M. after the Department again moved for an order to show cause regarding K.M.'s contempt in violating the March 23 placement order. The KC juvenile court found probable cause that K.M. had violated the placement order because she had refused to be transported to placement on December 14, and had run away from the social worker and a police officer.

K.M. was arrested on January 16, 2019. On January 17, the KC juvenile court continued K.M.'s scheduled contempt hearing to February 11 to allow for briefing and a full evidentiary hearing. K.M. was released from detention and returned to the Department's custody for placement in licensed care. The February 11, hearing was eventually stricken. Thus, K.M. was not found in contempt for a fourth time.

All of the KC juvenile court's show cause orders included the following information:

2.1 [K.M.] . . . **[is] DIRECTED TO PERSONALLY APPEAR at a HEARING ON THE ABOVE MOTION TO BE HELD:**

. . . .

**at: King County Superior Court, Juvenile Division, 516 Third Ave., Seattle, WA.**

. . . .

3.1 If an arrest warrant is issued:

    a. Pursuant to RCW 13.34.165(5) and 13.32A.065(1), FOLLOWING A CHILD'S ADMISSION TO DETENTION, **a DETENTION REVIEW HEARING must be HELD WITHIN TWENTY-FOUR HOURS,** (excluding Saturdays, Sundays, and holidays). Detention screening shall so notify parties and attorneys of record.

. . . .

3.5 Pursuant to RCW 13.34.165, **IF THE COURT MAKES A FINDING OF CONTEMPT,** the Court **MAY IMPOSE A FINE** of up to two thousand dollars ($2000.00) per day and continuing **CONFINEMENT** or both, until such time as the court finds that the child is no longer in contempt.

CP 28-31, 71-73, 81-83, 108-10.

C.  PETITION FOR WRIT OF HABEAS CORPUS

On January 17, 2019, K.M. filed a Petition for Writ of Habeas Corpus, which was the same day her fourth contempt hearing was originally scheduled. On February 8, the KC juvenile court ordered the transfer of K.M.'s cases from King County to Pierce County after all the King County judges were disqualified from the dependency matter and the writ of habeas corpus matter because "the matters are inextricably linked." CP at 8. On, February 26, the KC juvenile court transferred both cases to the PC juvenile court.

No. 53328-6-II

The Department filed a motion to accept venue with the PC juvenile court. On March 7, the PC juvenile court held a hearing on the Department's motion to accept venue of K.M.'s two consolidated cases - the dependency and the habeas corpus petition.

At the venue hearing, the Department informed the PC juvenile court that K.M.'s "whereabouts are currently unknown . . . but she's not in custody. And second, she's not currently subject to an order that would put [K.M.]'s physical liberty in jeopardy in any sort of way." Verified Report of Proceedings (VRP) at 5-6. K.M.'s lawyer argued that her liberty remained restrained because she could be re-arrested at any time. K.M.'s lawyer also argued that the March 23 order placing her in foster care did not specify where she was supposed to be and the consequences for her failure to comply. The PC juvenile court accepted venue over K.M.'s objection and then dismissed the habeas petition as moot.

In the Order Accepting Venue, the Pierce County juvenile court ordered:

1. Venue is accepted, over objection.
2. Court finds Habeas petition originally brought under 19-2-01622-1 is moot, and dismissed.
3. Court orders that venue of dependency matter under King Co. cause number 18-7-00257-3 SEA should be transfer[r]ed back to King Co. now that habeas petition is dismissed.
4. Court finds King Co. judicial officers are no longer conflicted from hearing dependency matter.

CP at 248.

K.M. appeals.

ANALYSIS

A.     MOOTNESS - LEGAL PRINCIPLES

The right to challenge an unlawful restraint by writ of habeas corpus is guaranteed by the Washington State Constitution. Const. Art. IV, section 6. The State Legislature has codified this right in RCW 7.36.010: "Every person restrained of his or her liberty under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal." If the petitioner shows that her restraint is illegal, the court must discharge her. RCW 7.36.120. The propriety of the writ of habeas corpus is a question of law that this court reviews de novo. *In re Personal Restraint of Becker,* 96 Wn. App. 902, 905, 982 P.2d 639 (1999), *aff'd,* 143 Wn.2d 491, 20 P.3d 409 (2001).

Being under physical restraint is not a prerequisite for obtaining habeas relief. *Harris v. Charles*, 151 Wn. App. 929, 934, 214 P.3d 962 (2009). A petitioner is also under restraint when she is subject to significant adverse consequences. *Id* (citing *Born v. Thompson*, 154 Wn.2d 749, 763, 117 P.3d 1098 (2005)).

A case is moot, and should be dismissed, when "it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

B.     RESTRAINT

K.M. argues that she is under restraint; thus, her petition is not moot. Specifically, K.M. argues that "so long as [she] faces 'the possibility of reincarceration' her habeas petition is not

moot." Br. of App. at 12. She contends that the possibility of reincarceration is based on the "pattern of arrest and jailing." Br. of App. at 12.

K.M. relies on *Monohan v. Burdman*, 84 Wn.2d 922, 530 P.2d 334 (1975), to show that "collateral consequences of an unconstitutional action are sufficient to establish a person is under restraint." Br. of App. at 11. In *Monohan*, the petitioner had his temporary parole release date cancelled, so he filed a petition for habeas corpus challenging the temporary parole release date cancellation. 84 Wn.2d at 923-24. After the petition was filed, but before the petition was heard, the petitioner was released from detention on parole. *Id.* at 924. Our Supreme Court held that Monohan's release did not render his petition moot because, as a parolee, he was subject to many restrictions and limitations. *Id.* at 925. And, "the potentially adverse effects of petitioner's tentative parole release date cancellation [have] sufficiently significant 'collateral consequences' to retrieve his petition from the 'limbo of mootness.'" *Id.* (quoting *Parker v. Ellis*, 362 U.S. 574, 577, 80 S. Ct. 909, 4 L. Ed. 2d 963 (1960) (dissenting opinion). This was because his supervising parole officer or a future sentencing judge could consider the rescission of his initial parole release date as a factor mitigating against continued parole or probation. *Id.*

K.M. also relies on *T.B. v. CPC Fairfax Hospital*, 129 Wn.2d 439, 918 P.2d 497 (1996), to show that a matter is not moot where the petitioner is at risk of reincarceration. In *T.B.*, the petitioner was involuntarily committed to a hospital. 129 Wn.2d at 444. After T.B. filed a petition for habeas corpus challenging her involuntary commitment, the petitioner escaped from the hospital. *Id.* at 444-45. The court held that although T.B. was not currently committed, because T.B. "still faces the possibility of reincarceration," the case is not moot because the court can still provide her with effective relief. *Id.* at 445.

Here, unlike in *Monohan*, K.M. has not shown any significant collateral consequences from the prior contempt orders. K.M. has not shown that her prior contempt orders would be considered as a factor in a future contempt proceeding that would lead to her detention. *See Monohan*, 84 Wn.2d at 925. In fact, as addressed below, the likelihood of K.M. being found in contempt and sanctioned with detention for leaving her placement no longer exists. Additionally, there is nothing in the record to show that K.M. could be placed in custody again because K.M. is not currently subject to any order that would put her liberty in jeopardy. *See T.B.*, 129 Wn.2d at 445. K.M. has been missing since at least March of 2019, and there is no outstanding order to show cause or arrest warrant.[3]

Because K.M. has not shown that she still faces the possibility of detention or that she faces significant collateral consequences from her prior contempt orders, K.M. has failed to show that she is under unlawful restraint. And because K.M. cannot show she is under unlawful restraint, no effective relief can be provided. *See T.B.*, 129 Wn.2d at 445. Therefore, the PC juvenile court did not err in concluding that the petition for habeas corpus was moot.

C.    MATTER OF CONTINUING AND SUBSTANTIAL PUBLIC INTEREST

K.M. argues that even if her petition is moot, her appeal should be addressed because her petition presents an issue of continuing and substantial public interest. We disagree.

An appellate court may, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are

---

[3] Given that K.M.'s whereabouts were unknown even as of the time of the hearing before the PC juvenile court on March 7, 2019, it is unclear the authority upon which counsel relied to file an appeal of the PC juvenile court's Order Accepting Venue.

involved. *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); *see Matter of Detention of P.P.*, 6 Wn. App.2d 560, 566, 431 P.3d 550 (2018). In deciding whether a case presents matters of continuing and substantial public interest, three factors are particularly determinative:

> "(1) [W]hether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." A fourth factor may also play a role: "the level of genuine adverseness and the quality of advocacy of the issues." Lastly, the court may consider "the likelihood that the issue will escape review because the facts of the controversy are short-lived."

*Satomi Owners Ass'n v. Satomi*, *LLC*, 167 Wn.2d 781, 796, 225 P.3d 213 (2009) (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004); *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994) ). The first three factors to be considered are "essential" in deciding whether to review a moot case. *Hart v. Department of Social & Health Services*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). In addition, "[a]fter a hearing on the merits, it is a waste of judicial resources to dismiss an appeal on an issue of public importance which is likely to recur in the future." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

Our Supreme Court has recognized that "the public has a great interest in the care of children and the workings of the foster care system." *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007). It has also recognized that the authority of the courts is a public matter. *Id*.

Our legislature also has recognized the importance of caring for children in the dependency system and has amended the statutes allowing for the detention of children who run away from their placement.

10

> The legislature finds that it is a goal of our state to divert juveniles who have committed status offenses, behaviors that are prohibited under law only because of an individual's status as a minor, away from the juvenile justice system because a stay in detention is a predictive factor for future criminal justice system involvement.
>
> . . . .
>
> . . . A new section is added to chapter 7.21 RCW to read as follows:
> (1) It is the policy of the state of Washington to eliminate the use of juvenile detention as a remedy for contempt of a valid court order for youth under chapters 13.34 and 28A.225 RCW and child in need of services petition youth under chapter 13.32A RCW.

Laws of 2019, ch. 312, sec. 1, 2.

As result, as of July 1, 2020, "youth may not be committed to juvenile detention as a contempt sanction under chapter 13.34 RCW." Laws of 2019, ch. 312, sec. 2(1)(a); *see* RCW 13.34.165 (Civil contempt-Grounds-Motion-Penalty-Detention review hearing. (Effective July 1, 2020)); RCW 7.21.030 (Remedial sanctions-Payment for losses. (Effective July 1, 2020, until July 1, 2021)). Also, law enforcement is no longer allowed to bring children to juvenile detention, but will be required to bring children to the Department. RCW 13.34.165(3) (Civil contempt-Grounds-Motion-Penalty-Detention review hearing. (Effective July 1, 2020)).

Here, K.M's petition satisfies the first factor for a case presenting a matter of continuing and substantial public interest—it involves an issue of a public nature; namely, the care of children and the authority of the juvenile courts in a dependency proceeding. However, because the law pertaining to contempt and sanctions has changed, an authoritative determination based on statutes that have been amended would not provide future guidance to judges. In fact, the legislature has already provided the guidance in its stated reasons that required their amendments and by requiring warrants to direct law enforcement to return children to the Department instead of juvenile

11

detention. And because the law has changed, the same issue will not recur. Thus, K.M.'s petition does not present an issue of continuing and substantial public interest.

The PC juvenile court did not err in concluding that the petition for habeas corpus was moot. And K.M.'s petition does not present an issue of continuing and substantial public interest. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Worswick, J.

Melnick, J.