# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 57552-3-II |
| LORNE FRANK BLAYLOCK, | PUBLISHED OPINION |
| Petitioner. | |

MAXA, J. – In this personal restraint petition (PRP), Lorne Blaylock challenges the determination of the Indeterminate Sentencing Board (ISRB) that Blaylock violated the terms of his community custody.

The violation stemmed from an incident in February 2021 in which Blaylock threatened to stab one of his roommates. A jury found him guilty of felony harassment-death threats. Based on that conviction, the ISRB determined that Blaylock had violated the terms of his community custody by failing to obey all laws. The trial court later ordered the conviction vacated due to insufficient evidence. But in June 2022, the ISRB held a second hearing at which it again found that Blaylock violated the terms of community custody because he engaged in conduct constituting misdemeanor harassment during the February 2021 incident.

WAC 381-100-290(2) states, "No finding of a violation of conditions may be based on hearsay evidence alone." One element of misdemeanor harassment is that the victim must be placed in reasonable fear that the threat will be carried out. RCW 9A.46.020(1)(b)[1]. Blaylock

---

[1] RCW 9A.46.020 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

argues that the ISRB's determination that the victim was placed in reasonable fear was based on hearsay evidence alone.

Two months after the violation determination the ISRB determined that Blaylock was releasable despite the violation. As a result, the ISRB argues that this appeal is moot because Blaylock no longer is under restraint. Blaylock argues that the PRP is not moot because the June 2022 violation determination potentially could adversely affect him in future proceedings before the ISRB.

We hold that (1) this PRP is not moot because Blaylock is being restrained by the ISRB's violation determination, and (2) the ISRB's determination that Blaylock's threat placed his roommate in reasonable fear that the threat would be carried out was based solely on hearsay contrary to WAC 381-100-290(2). Accordingly, we reverse the ISRB's June 2022 violation determination and remand for the ISRB to vacate the determination.[2]

## FACTS

*Background*

In 2011, Blaylock pleaded guilty to two counts of first degree child molestation. The trial court sentenced him to 77 months to life in confinement and imposed community custody for life. In February 2020, Blaylock was released from confinement and to community custody.

In February 2021, Blaylock was living in transitional housing in Vancouver with approximately 10 other people. A month earlier, Blaylock suffered from mental health issues and was civilly committed to Rainier Springs Hospital.

---

[2] Blaylock also argues that the June 2022 violation determination must be reversed based on a recent United States Supreme Court case, *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). Because of our holding, we do not address this issue.

On February 1, Blaylock had an altercation with one of his roommates, Matthew Walker. Walker was walking up a staircase that led to a hallway near the kitchen. Blaylock was standing on the other side of the open door at the top of the stairs. As Walker walked up the stairs, Blaylock slammed the door closed. Walker took out his phone and began recording.

Walker opened the door and recorded Blaylock standing shirtless in the kitchen. Blaylock said, "Filthy ass, Billy[3], if I see him again." Video 1.[4] Walker responded, "You're going to stab me with a knife?" Blaylock said, "I'm going to stab you with a knife. I know what you've done in your life, and I – beat me down when I haven't even had a bite of food. I will stab you down. You better – you better want to shoot me now." Walker said, "Is that how it's gonna be?" Blaylock responded, "That's how it's gonna be." The video then ended.

Walker stopped recording and closed the door. He spoke with the landlord and then called 911. A police officer responded and took a statement from Walker.

Blaylock was arrested later that day. The arresting officer noted that Blaylock had a hernia on his stomach the size of a softball and that he exhibited signs of mental illness. Specifically, the officer noted that Blaylock was mumbling to himself and seemed to believe that he was pregnant.

The State charged Blaylock with one count of felony harassment-death threats.

*Trial Court Proceedings*

A jury trial took place in June 2021. Walker testified that he pulled his phone out to record Blaylock because he "was afraid of what was going to happen. It was kind of like whoa,

---

[3] It is unclear if Blaylock said "Billy" or "belly."

[4] Dialogue through the remainder of this paragraph is taken from a video labeled "Video 1", submitted to this court by petitioner's attorney.

what's going on?" Pet'r's Opening Br., App. at 39-40. He said, "I was worried that I wouldn't be able to like, you know, protect myself . . . Just everyone needs proof these days, so if I had a phone to show what was going on, maybe someone could see it and understand what's going on and help." Pet'r's Opening Br., App. at 51.

After watching the video of his encounter with Blaylock during his testimony, Walker said, "It almost – it almost seems like he had me confused with someone else." Pet'r's Opening Br., App. at 42. He also testified that Blaylock's mental health had been deteriorating over time and that he wanted Blaylock to get the help he needed.

The jury found Blaylock guilty of felony harassment – death threats. The trial court sentenced Blaylock to eight months in confinement, mental health treatment, and an anger management evaluation, and issued a no contact order with Walker. Blaylock appealed his judgment and sentence.

*First ISRB Hearing*

In July 2021, the ISRB held an *Akridge*[5] hearing for Blaylock. Under *Akridge*, a conviction establishes a parole violation, but the offender is entitled to a hearing regarding whether the violation should result in a revocation of parole. 90 Wn.2d at 352-53. After the hearing, the ISRB determined that there had been a violation based on the felony harassment conviction and revoked Blaylock's community custody based on the conviction. The ISRB set an 18-month minimum term in confinement for Blaylock.

In February 2022, while Blaylock's appeal of his felony harassment conviction was pending, the State and Blaylock filed a joint motion to vacate the conviction and dismiss the case

---

[5] *In re Pers. Restraint of Akridge*, 90 Wn.2d 350, 581 P.2d 1050 (1978).

based on insufficient evidence. The trial court entered an agreed order vacating the judgment and sentence and dismissing the charge with prejudice. Blaylock remained in custody.

*Second ISRB Hearing*

In April 2022, the Department of Corrections (DOC) filed a new notice of a violation, alleging that Blaylock's actions on February 1, 2021 violated his supervision conditions by failing to obey all laws for behavior defined by RCW 9A.46.020(2)(a), misdemeanor harassment. A new hearing was required because his felony harassment conviction, which was the basis for the violation determination in July 2021, had been vacated.

In June 2022, the ISRB held a new hearing to determine if Blaylock should be able to remain on community supervision. The ISRB considered the video of the incident and the transcript of Walker's trial testimony, which is summarized above. The ISRB also considered the police report regarding the incident. The police report stated, "Walker said he was afraid that Blaylock would stab him, and thought Blaylock had a knife in his hand. Walker told me he almost pepper sprayed Blaylock because he was in fear of Blaylock." Pet'r's Opening Br., App. at 30.

Blaylock argued that the tone of Walker's voice in the video did not show reasonable fear. And he emphasized that Walker's trial testimony did not show that Walker was in fear. Blaylock stated that the lack of evidence showing that Walker had reasonable fear was why the conviction had been vacated.

DOC argued that Walker stated that he was scared and anxious of Blaylock's behavior, which proved that he had subjective fear. DOC noted Walker's testimony that he started recording because he was afraid of what was going to happen.

Blaylock argued in response that the transcript of Walker's trial testimony was hearsay because there was no showing that Walker was unavailable to testify. Blaylock noted that the ISRB could not make its determination based solely on hearsay evidence.

The ISRB presiding member found Blaylock guilty of the violation of supervision conditions. The presiding member stated, "Yes we do have the hearsay but we also have that corroborated by video evidence that has been provided. There's also court information and . . . police report too." Pet'r's Opening Br., App. at 189. The ISRB revoked Blaylock's community custody and set a minimum term in confinement of 18 months.

However, on August 3, 2022 the ISRB held a release hearing for Blaylock. The ISRB determined that Blaylock was releasable, and that the next step was for him to submit an offender release plan for the ISRB's consideration. As of November 2023, the ISRB had not yet approved any of Blaylock's release plans, so he still was in custody.

Blaylock appeals the ISRB's June 2022 finding that he committed a violation of his terms of community custody.

## ANALYSIS

### A.     PRP PRINCIPLES

RAP 16.4(a) states that the appellate court will grant appropriate relied if a petitioner is under unlawful restraint. Pursuant to RAP 16.4(b), a petitioner is under restraint if "the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case."

A petitioner must show that they are under unlawful restraint to succeed on a PRP challenge of an ISRB decision. *In re Pers. Restraint of Lambert*, ___ Wn. App. ___, 543 P.3d

836, 841 (2024). Unlike in a typical PRP, a petitioner need not show actual and substantial prejudice to successfully challenge an ISRB decision. *In re Pers. Restraint of Campbell*, 27 Wn. App. 2d 251, 258, 533 P.3d 144 (2023).

B.   MOOTNESS

The ISRB argues that Blaylock's PRP is moot because Blaylock has been determined to be releasable and therefore is not currently being unlawfully restrained. Blaylock argues that the PRP is not moot because the June 2022 violation determination potentially could adversely affect him in future proceedings before the ISRB. We agree with Blaylock.

1.   Legal Principles

An issue is moot if we can no longer provide effective relief. *State v. Ingram*, 9 Wn. App. 2d 482, 490, 447 P.3d 192 (2019). However, we can consider a moot issue if the issue involves continuing and substantial public interest. *Id.*

The Supreme Court addressed the issue of mootness in the context of a similar case involving state habeas corpus. In *Monohan v. Burdman*, the court decided that the petitioner's application for a writ of habeas corpus was not moot even though the petitioner already had been released from custody. 84 Wn.2d 922, 924-25, 530 P.2d 334 (1975). In that case, the petitioner challenged the summary revocation of his parole release date without appropriate notice or hearing. *Id.* at 923. However, the petitioner subsequently received a tentative release date, which occurred after the petitioner filed his petition but before oral argument took place. *Id.* at 924.

The Supreme Court held that the case was not moot for two reasons. First, the court held that the restrictions and conditions attached to a petitioner's parole status fell within the scope of

7

habeas corpus relief because a parolee's freedom is restricted and the parolee is "subject to reincarceration in the event of a breach of any conditions of his parole." *Id.* at 925.

Second, the court stated that "the potentially adverse effects of petitioner's tentative parole release date cancellation are sufficiently significant 'collateral consequences' to retrieve his petition from the 'limbo of mootness,' although he is no longer physically incarcerated by virtue of that release date revocation." *Id.* (quoting *Scarpelli v. Gagnon*, 317 F. Supp. 72 (E.D. Wis. 1970), *aff'd sub nom.*, *Gunsolus v. Gagnon*, 454 F.2d 416 (7th Cir. 1971), *aff'd in part, rev'd in part on other grounds sub nom.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). The court reasoned, "It is not unlikely that his supervising parole officer or a future sentencing judge, in the event of an infraction of the rules of parole or law, might well consider the rescission of his initial parole release date as a factor mitigating against continued parole or possible probation." *Id.*

In *In re Personal Restraint of Mines*, the petitioner's parole was revoked after a revocation hearing. 146 Wn.2d 279, 282, 45 P.3d 535 (2002). The petitioner sought a new hearing because the tape of the hearing was blank. *Id.* at 282-83. The ISRB argued that the petition was moot because the petitioner subsequently had been released on parole. *Id.* at 283-84. The petitioner argued that the case was not moot because collateral consequences still existed. *Id.* at 284.

The court noted that the collateral consequences the petitioner might suffer because of his prior parole revocation were similar to those mentioned in *Monohan*. *Id.* The court acknowledged that *Monohan* arguably was distinguishable because that case involved a request for habeas corpus relief rather than a PRP. *Id.* However, the court did not decide whether the

case was moot because it concluded that the case presented matters of continuing and substantial interest that should be decided even if the case was moot. *Id.*

2. Analysis

The ISRB argues that Blaylock's *confinement* no longer represents unlawful restraint under RAP 16.4(b). The ISRB has determined that he is releasable, and he remains in confinement only because an offender release plan has not yet been approved.

However, assuming that Blaylock's arguments on the merits are correct, Blaylock's continued incarceration arguably constitutes unlawful restraint. But for the ISRB's alleged error, Blaylock would have been released back to community custody.

In addition, confinement or the threat of confinement is not the only type of restraint under RAP 16.4(b). RAP 16.4(b) does not require a petitioner to be in custody in order to be under restraint. *Born v. Thompson*, 154 Wn.2d 749, 764-65, 117 P.3d 1098 (2005). Restraint also includes when "the petitioner is under some other disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b).

Here, the ISRB's June 2022 violation determination could have negative collateral consequences in the future for Blaylock. WAC 381-100-050(2)(g) states that "[i]n making a decision on sanctions, community custody revocation or reinstatement," the ISRB can consider "[t]he previous board action during the period of community custody." The question here is whether those collateral consequences constitute restraint in the form of "some other disability" under RAP 16.4(b) that can be considered in deciding whether this case is moot.

Blaylock argues that this case is similar to *Monohan*, 84 Wn.2d 922. He asserts that as in *Monohan*, this case is not moot because the June 2022 ISRB determination potentially could harm him in future hearings before the ISRB. He analogizes his case to involuntary commitment

cases, where the general rule is that the expiration of a civil commitment order does not render an appeal of that order moot because the order could have adverse consequences in future involuntary commitment proceedings. *See In re Det. of M.K.*, 168 Wn. App. 621, 625-26, 279 P.3d 897 (2012).

The ISRB argues that the relevant legal issue is whether Blaylock currently is under restraint for purposes of RAP 16.4(b). The ISRB emphasizes that speculation that the June 2022 determination potentially could affect Blaylock if he ever appears before the ISRB in the future does not establish present restraint. The ISRB also argues that *Monohan* is distinguishable because it involved an application for a writ of habeas corpus, not a PRP, and therefore did not address the issue of current unlawful restraint.

We conclude that assuming Blaylock's arguments on the merits are correct, he remains under unlawful restraint even though his present confinement is not unlawful. Under WAC 381-100-050(2)(g), the ISRB may consider its June 2022 violation determination in a future hearing. Although it is not certain that Blaylock will appear before the ISRB in the future, the June 2022 violation determination is hanging over Blaylock's head. Presently, there is a real potential that the violation determination will negatively impact him in the future. And Blaylock will have no other opportunity to challenge the determination.

The existence of the June 2022 violation determination constitutes "some other disability" under RAP 16.4(b) and therefore constitutes restraint. Accordingly, we hold that this case is not moot.

C.     RELIANCE ON HEARSAY EVIDENCE

Blaylock argues that the ISRB erred in its June 2022 violation determination because it relied solely on hearsay evidence in determining that he engaged in behavior that constituted misdemeanor harassment, in violation of WAC 381-100-290(2).  We agree.

1.     Standard of Review

We review ISRB decisions for an abuse of discretion.  *Campbell*, 27 Wn. App. 2d at 258. We give ISRB decisions substantial deference, and we do not substitute our discretion for that of the ISRB.  *Id.*  However, The ISRB abuses its discretion when it fails to follow its procedural rules or bases a decision on speculation alone.  *Id.*  "The petitioner bears the burden of proving that the ISRB abused its discretion."  *Id.*

2.     Legal Principles

DOC's violation notice alleged that Blaylock had violated RCW 9A.46.020(2)(a).  RCW 9A.46.020(1) states,

> (1) A person is guilty of harassment if:
> (a) Without lawful authority, the person knowingly threatens:
> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; . . . and
> (b) The person by words or conduct *places the person threatened in reasonable fear that the threat will be carried out*.

(Emphasis added.)  RCW 9A.46.020(2)(a) states that harassment is a gross misdemeanor.

Relevant here, DOC had to prove that Walker was placed "in reasonable fear that the threat will be carried out," RCW 9A.46.020(1)(b), in order to prove a violation.  Reasonable fear can be proved through either direct testimony or circumstantial evidence.  *See State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014) (stating that circumstantial and direct evidence are equally reliable).

WAC 381-100-280 outlines the rules for admissibility of evidence in ISRB hearings.

WAC 381-100-280(1) states,

> All relevant evidence shall be admissible which, in the opinion of the presiding officer, is the best evidence reasonably obtainable, having due regard for its necessity, availability, and trustworthiness. 'Relevant evidence' means evidence having a tendency to make the determination of the action more or less probable than it would be without the evidence.

This provision does not preclude the admission of hearsay evidence. However, WAC 381-100-290(2) states, "No finding of a violation of conditions may be based on hearsay evidence alone."

### 3. Analysis

Blaylock argues that the only evidence that Walker was placed in reasonable fear that Blaylock's threat would be carried out was hearsay: the transcript of Walker's trial testimony in which Walker stated that he "was afraid of what was going to happen," Pet'r's Opening Br., App. at 40, and the police report stating that "Walker said he was afraid that Blaylock would stab him, and thought Blaylock had a knife in his hand. Walker told me he almost pepper sprayed Blaylock because he was in fear of Blaylock." Pet'r's Opening Br., App. at 30.[6]

The presiding member found, and the ISRB emphasizes, that the video of the incident corroborated the hearsay evidence. Blaylock concedes that the video was not hearsay. Therefore, the ISRB argues that the violation determination was not based on hearsay evidence alone.

Technically, the ISRB's ultimate violation determination was not based solely on hearsay evidence because the video established the first element of misdemeanor harassment: a knowing threat. However, we conclude that the only reasonable interpretation of WAC 381-100-290(2) is

---

[6] Walker's trial testimony is hearsay because that testimony was not given at the ISRB hearing, and the hearsay exception for former testimony under ER 804(b)(1) is inapplicable because there was no showing that Walker was unavailable. The police report is double hearsay: the officer's out-of-court statement about what Walker said.

that *each element* of a violation cannot be based on hearsay evidence alone. Therefore, the question is whether only hearsay evidence supported the second element of misdemeanor harassment: whether Walker was placed in reasonable fear that Blaylock's threat would be carried out.

Here, the video of the incident potentially could provide circumstantial evidence that Walker was placed in reasonable fear. But the video supports only a finding that Blaylock threatened Walker. Nothing in the video suggests that Walker was in fear. Walker deliberately encountered Blaylock and then briefly spoke to him in a calm tone while recording the interaction. Therefore, the video does not support a finding that Walker was placed in reasonable fear that Blaylock's threat would be carried out.

Without the video, the only evidence showing reasonable fear was Walker's hearsay statements. This means that the ISRB's violation determination was based on hearsay evidence alone, contrary to WAC 381-100-290(2). Accordingly, we hold that the ISRB abused its discretion in making the June 2022 violation determination.

CONCLUSION

We reverse the ISRB's determination and remand for the ISRB to vacate the determination.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
GLASGOW, J.

13